HOWARD MAGER and MURA MAGER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mager v. Commissioner
Docket No. 12537-80.
United States Tax Court
T.C. Memo 1984-211; 1984 Tax Ct. Memo LEXIS 469; 47 T.C.M. (CCH) 1651; T.C.M. (RIA) 84211; April 24, 1984. James R. Hawkins, II, and Richard W. Tomeo, for the petitioners. Joseph Long and Andrew R. Ceccherini, for the respondent. *470 HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies in the amount of $1,232.49 and $13,375.00 in petitioners' joint 1973 and 1976 Federal income texas. The issues for determination are whether petitioners' chinchillas breeding activity was engaged in for profit, entitling them to deductions under section 162 and investment tax credit under section 38. [1]
Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Howard Mager and Mura Mager [2] resided in Brooklyn, New York, when they filed their joint Federal 1973, 1976 and 1973 amended income tax returns with the Internal Revenue Service Center at Holtsville, New York, and when they filed their petition in this case. *471 Petitioner is a full-time securities analyst specializing in aerospace and electrical equipment industries. Petitioners received income for the years 1973 and 1976 in the amount of $46,200.00 and $57,500.00, respectively. Petitioner had no experience in raising chinchillas prior to 1976, and was not qualified to determine the value of chinchillas. In late September 1976, petitioner met Jerald Greenberg ("Greenberg"). On November 1, 1976, petitioner signed a purchase agreement with Rolling Hills Farms, Inc. ("Rolling Hills") to buy 72 female chinchillas, described as 36 standard and 36 beige. Rolling Hills was incorporated on November 9, 1976. Greenberg signed the purchase agreement as president of Rolling Hills. Petitioner did not investigate Rolling Hills, and did not know when the corporation went into business. Greenberg introduced petitioner to Everett Cornell ("Cornell"). On November 9, 1976, petitioner executed a management agreement with Great Eastern Breeders, Inc. ("Great Eastern"). Cornell signed the agreement on behalf of the corporation. The agreement provided that petitioner would pay $9,600.00 in 1976, and the same amount in subsequent years if the sale *472 of chinchilla progeny generated $9,600.00 in revenue. Before 1972, neither Greenberg nor Cornell had any experience or expertise in the breeding of chinchillas. Beige chinchillas were a new mutation strain in 1964. In 1967 the price paid for beige chinchillas, due to their scarcity, was $800.00 per animal. By 1976, the market had changed and the price of beige chinchillas dropped. Beige pelts sold for less than standard pelts in 1977. In 1976, a herd of 72 best quality female chinchillas, half beige and half standard, with a four generation pedigree typically would be sold for a maximum of $300.00 per animal. Chinchillas with shorter pedigrees or of lower quality would be sold for substantially lower prices. Under the terms of petitioner's purchase agreement with Rolling Hills the price of his 72 chinchillas was $56,800.00, or approximately $789.00 per chinchilla. As required by the purchase agreement, petitioner executed a note for $53,800.00 due November 9, 1976, which provided Rolling Hills with a security interest in the chinchillas, and stated that no payments of interest or principal were due unless certain dollar levels of chinchilla sales were achieved. On November 1, 1976, petitioner *473 wrote a check to Rolling Hills in the amount of $13,228.00. Of this amount, $3,000.00 was designated as payment of the purchase price, $628.00 was characterized as interest, and $9,600.00 was designated as payment of management expenses due Great Eastern. Greenberg executed a bill of sale on behalf of Rolling Hills on November 9, 1976. The normal industry practice is for an adult chinchilla to be branded or tattooed once, and the marking lasts for the life of the chinchilla. The standard practice is to mark one ear with a series of letters identifying the ranch where the chinchilla was born, and to tattoo the other ear with a letter showing the year the chinchilla was born and a number showing in what chronological sequence it was born among all the young on a ranch in a particular year. Retitioner's purchase agreement and bill of sale describe 36 standard chinchillas, tattooed with numbers 5073 through 5108, and 36 beige chinchillas, tattooed numbers 60073 through 6108. Forty-inne of petitioner's chinchillas were born in 1974, two were both in 1975 and twenty-one were born in 1976. When respondent's expert witnesses examined petitioner's chinchillas in February 1983, several *474 of the animals showed signs of recent tattooing, and more than one tattoo and were not marked with numbers corresponding to those listed in the last quarterly herd report received by petitioner. Petitioner's chinchillas were not marked in accordance with normal industry practice. Pedigree cards containing genetic information going back at least four generations are normally kept in the chinchilla business. A lack of genetic information adversely affects the value of a chinchilla used for breeding. Records of this type were not maintained for petitioner's herd. Petitioner visited his herd four times, once in 1976, twice in 1977, and once in 1978. Petitioner did not know if his chinchillas were ever shown in competition. No pelts from petitioner's chinchillas or their progeny were over sold. Petitioner's evidence on the number and types of young born to his herd was inconsistent. The quarterly herd report for the period ending December 31, 1976, states that 35 young were born to petitioner's chinchillas, 26 young were born prior to November 1976, and 9 were born in November and December of 1976. The quarterly herd report for the period ending March 31, 1977, states that *475 51 young were born to petitioner's herd in 1976. Petitioner's 1977 tax return and a sales agreement dated December 31, 1977 states that petitioner sold 54 chinchillas born to the herd in 1976 to Great Eastern. Nine of the 54 are described in the sales agreement as standard cross. However, none of the chinchillas born in 1976 were identified as standard cross on the quarterly herd report for the period ending December 31, 1976. The quarterly herd report for the period ending December 31, 1977, states that 114 young were born to petitioner's herd in 1977. Petitioner's 1978 tax return and a sales agreement dated December 31, 1978, states that petitioner sold 133 chinchillas born to the herd in 1977 to Great Eastern. Cornell died in 1979, and Great Eastern was dissolved on January 10, 1979. Petitioner's herd was managed after this time by Chinchilla Breeders Cooperative, Inc. ("The Cooperative"), which was incorporated on February 1, 1980. Greenberg has signature authority over the bank accounts of the Cooperative. Ann Lucier ("Lucier") is the president and general manager of the Cooperative, and has no experience in the chinchilla business. The Cooperative does not issue *476 any quarterly or yearly herd reports to herd owners. The Cooperative does not kill chinchillas for pelts, and does not sell pelts. Respondent contends that petitioner's activities with respect to the chinchillas were activities "not engaged in for profit" within the meaning of section 183(a). Section 183(b) provides that if an individual's activities are "not engaged in for profit" only those deductions allowable regardless of a profit objective (such as interest and taxes) may be taken. If, however, an individual realizes gross income from the conduct of the activity, he may offset that income by his otherwise nondeductible expenses after first reducing the income by the deduction allowed irrespective of a profit objective. The test for allowability of deductions is whether the taxpayer entertained an actual and honest profit objective in engaging in the activity generating the expenses claimed as deductions. Sec.1.183-2(a), Income Tax Regs.; Dreicer v. Commissioner,78 T.C. 642 (1982), affd. in an unpublished opinion, 702 F.2d 1205 (D.C. Cir. 1983). While the taxpayer's expectation of profit need not be reasonable there must be a good faith *477 objective of making a profit. Allen v. Commissioner,72 T.C. 28, 33 (1979). The determination of whether the requisite profit objective exists is to be resolved on the basis of all the facts and circumstances. Dunn v. Commissioner,70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980). The burden of proof is on petitioner, Golanty v. Commissioner,72 T.C. 411 (1979), affd. in an unpublished opinion 647 F.2d 170 (9th Cir. 1981), with greater weight given to objective facts than to petitioner's mere statement of intent. Sec. 1.183-2(a), Income Tax Regs.; Engdahl v. Commissioner,72 T.C. 659, 666 (1979). The regulations provide a list of factors relevant in determining whether a taxpayer has the requisite profit objective. No one factor is conclusive, and we do not reach our decision herein by merely counting the factors that support each party's position. Sec. 1.183-2(b), Income Tax Regs.; Dunn v. Commissioner,supra at 720. Certain factors are given more weight than others because they are more meaningfully applied to the evidence in this case. The factors *478 set forth in section 1.183-2(b), Income Tax Regs., are: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, that is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. Some of these elements, such as the lack of personal pleasure, are apparent from the facts in this case and require no further discussion. Petitioner did not carry on his chinchilla activities in a business like manner. [3] He paid a grossly inflated price for his herd since he paid $789.00 per chinchilla when the maximum typical price was $300.00. After 1978, no herd reports were made, and the herd reports for 1976 through 1978 appear inaccurate and inconsistent. Pedigree information, essential to a successful breeding operation, *479 was not maintained on the chinchillas. Additionally, the method of marking the chinchillas varied wildly from industry practice. No ranch brands were made, and despite the fact that the animals were born in three different years, they were numbered sequentially. Many chinchillas identified as petitioner's in 1983 could not be matched with the last available list of tattoo numbers. Several animals bore more than one tattoo, and some of the tattoos were recent. Petitioner had no experience with chinchillas prior to his involvement in 1976, Cornell and Greenberg became interested in chinchillas in 1972, and were not qualified as experts. Petitioner did not seek expert advice or valuation and made only a cursory investigation before purchasing the herd of chinchillas. Lucier, the general manager of the herd, has no experience with chinchillas. Petitioner was actively engaged in the profession of securities analyst, and, by his own testimony, spent little time on his chinchilla activity. He visited the herd a total of four times. Petitioner testified that he had expected the value of his herd to appreciate, *480 but he offered no evidence in support of this self-serving contention. No evidence was presented with regard to any similar activities conducted by petitioner or the existence of any occasional profits from the operation of the chinchillas herd. Petitioner failed to produce any concrete evidence concerning projected future earnings. No pelts were ever sold, and animals were not killed for pelts. Additionally, the tax returns filed by petitioner show that substantial income was received from petitioner's employment as a security analyst. Petitioner garnered thousands of dollars in savings from the continuous losses and credits generated by his chinchilla here.
Viewing objectively all of the evidence in this case, we hold that under section 183 petitioner was not engaged in an activity for profit in relation to his chinchilla herd. The manner in which the chinchilla herd was operated is not indicative of a bona fide objective to make a profit. Considering the inflated price petitioner paid for the herd, the way the purchase was structured, the decreasing value of beige chinchillas and the lack of any pelt sales, we do not believe petitioner ever entertained the requisite profit *481 motive. We have considered petitioner's other arguments and find them unpersuasive. Therefore, since petitioner's chinchilla breeding activity was not engaged in for profit, he is not entitled to deductions under section 162 and investment tax credits under section 38. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
2. Petitioner Mura Mager is a party to this action only by virtue of having filed joint returns in 1973 and 1976 with her husband petitioner Howard Mager. Therefore "petitioner" in the singular form hereinafter refers to petitioner Howard Mager.↩
3. See Hurd v. Commissioner,T.C. Memo. 1978-113↩.